**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**October 2, 2012**

# In the Court of Appeals of Georgia

A12A1580. FLEMISTER v. THE STATE.

BARNES, Presiding Judge.

A jury convicted Bobby Flemister of possession of cocaine, possession of marijuana with intent to distribute, and possession of a firearm during the commission of a crime. On appeal from the denial of his motion for new trial, Flemister contends that there was insufficient evidence to convict him of possession of marijuana with intent to distribute; that the trial court erred in admitting into evidence a statement he made to a police lieutenant before he was informed of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966); and that the trial court erred in allowing hearsay testimony from the lieutenant linking him to a residence where drugs and drug paraphernalia had been found by the police. Flemister also

argues that his trial counsel rendered ineffective assistance in several respects. For the reasons set forth below, we affirm.

Following a criminal conviction, the defendant is no longer presumed innocent, and we view the evidence in the light most favorable to the jury's verdict. See *Jackson v. State*, 314 Ga. App. 272 (724 SE2d 9) (2012). So viewed, the evidence showed that on November 16, 2002, special agents with the Griffin-Spalding County Narcotics Task Force executed a search warrant at a residence where they suspected that drugs were being sold. As part of the surveillance conducted before the search, agents had observed Flemister's car outside the house on several occasions, and they believed that he lived there. In preparing for execution of the warrant, the police lieutenant who led the task force briefed the other agents about the suspected drug activity at the house and about Flemister and his car.

When the lieutenant and other special agents arrived at the residence to execute the warrant, Flemister and his car were not there. The lieutenant stationed agents outside the house, advised them to be on the lookout for Flemister, and provided them with a physical description of his car.

Upon entering the residence, agents found crack cocaine residue, razor blades with crack cocaine residue on them, smoking devices, and green plastic baggies.

Based upon his 11 years of training and experience as a narcotics agent and involvement in over 1,000 drug investigations, the lieutenant identified the baggies as the type commonly used for packaging large quantities of drugs into smaller bundles for distribution.

Agents also noticed that the residence lacked furniture, was extremely dirty, and had wax all over the countertops in different rooms where candles had been burned. There was no running water or power in the house, except for an extension cord that had been run through a window to a neighbor's house to provide a small amount of electricity. According to the lieutenant, the house "appeared to be what's commonly referred to as a . . . smokehouse," which is "a residence where people can go in and can purchase quantities of illegal narcotics and use them right there on the scene."

Agents also found documents on the floor of the living room. One of the documents was a business letter that was addressed to Flemister at the residence. Another document was a final judgment and decree of divorce for Flemister and his ex-wife. Like the business letter, the certificate of service for the final judgment and decree of divorce listed the residence as Flemister's address.

As agents continued searching the residence, Flemister drove down the street in the car that had been described to the agents by the lieutenant. A crowd that had gathered outside began shouting to Flemister as he drove toward the house. One of the agents stationed outside heard the shouting and recognized the car coming down the road. The agent stepped into the middle of the road and yelled for Flemister to stop, but Flemister kept "looking straightforward," ignored the agent's commands, and continued driving past him. The agent quickly jumped into a patrol car with another agent and began to pursue Flemister. As the agents followed Flemister, he threw something out of his car window. When later recovered by one of the agents, the item thrown from the car was identified as a bag of individual green baggies containing a total of 11.81 grams of marijuana. The baggies were of the same type that had been found inside the residence.

After throwing the baggies of marijuana from his window, Flemister stopped his car, and an agent approached and detained him. Upon opening the driver's side door of Flemister's car, an agent saw cocaine in the window track of the open window. The agent also saw a plastic bag in the pocket of the door. The bag contained the corners of torn-off sandwich baggies with cocaine inside them. In

addition to the cocaine, the agent saw a handgun in plain view next to the driver's seat.

Flemister was placed in the back of a patrol car. The police lieutenant approached Flemister, told him that he was going to be transported to the county jail, explained to him that the jail was cold and had a shortage of blankets, and asked him "if he wanted a jacket out of his house." Flemister responded that he wanted his green jacket out of the upstairs closet, and the lieutenant went inside and retrieved it for him. The verbal exchange about the jacket occurred before Flemister was advised of his *Miranda* rights.

Flemister was indicted and tried before a jury on charges of possession of cocaine with intent to distribute, possession of cocaine, possession of marijuana with intent to distribute, and possession of a firearm during the commission of a crime.[1] Flemister was charged for the cocaine and firearm found in his car and the marijuana that he had thrown from his car; the State only introduced evidence of the drugs and drug paraphernalia found in the searched residence to prove circumstantially that he

[1] The indictment also charged Flemister with one count of possession of cocaine with intent to distribute within 1,000 feet of a school, one count of possession of marijuana with intent to distribute within 1,000 feet of a school, and two counts of possession of a firearm by a convicted felon, but the State later requested and obtained entry of a nolle prosequi on those counts.

had the intent to distribute. The lieutenant and other agents involved in execution of the search warrant and arrest of Flemister testified to the events as summarized above, and the State also called as expert witnesses the individuals who tested the cocaine found in the car and the marijuana thrown from the car.

Flemister testified in his own defense. He admitted that he and his mother previously lived at the residence where the search warrant had been executed, but he claimed that neither of them lived there currently and that he had nothing to do with the "smokehouse" that the residence had become. According to Flemister, he had moved to another residence located down the same street, and the residence where the search occurred was now an "abandoned house" that had become squalid after he and his mother had moved out. Flemister testified that some of his mail might still be at the searched residence, but he denied having any belongings remaining there. He also claimed that the lieutenant and other agents were lying about the cocaine found in his car, about him throwing marijuana from his car window, and about his asking the lieutenant to retrieve the green jacket for him from the upstairs closet. Flemister further claimed that his brother drove the car as much as he did and that it was his brother who continued to "hang down there all the time" at the searched residence even after he and his mother had moved out.

6

After hearing all of the testimony, the jury convicted Flemister of possession of cocaine, possession of marijuana with intent to distribute, and possession of a firearm during the commission of a crime, but acquitted him of possession of cocaine with intent to distribute. Flemister filed a motion for new trial in which he contended, among other things, that his trial counsel had been ineffective. Following an evidentiary hearing, the trial court denied the motion, resulting in this appeal.

1. Flemister first contends that there was insufficient evidence to convict him of possession of marijuana with intent to distribute. Specifically, he argues that there was insufficient evidence showing that he acted with the intent to distribute the marijuana. We disagree.

"To prove possession with intent to distribute, the State must show more than mere possession of a controlled substance." *Gerlock v. State*, 283 Ga. App. 229, 230 (1) (641 SE2d 240) (2007). "No bright line rule exists regarding the amount or type of evidence sufficient to support a conviction for possession with intent to distribute," and "whether the State has proven an intent to distribute . . . is peculiarly a question of fact for determination by the jury." (Citations and punctuation omitted.) *Bailey v. State*, __ Ga. App. __, __ (728 SE2d 747) (2012). Furthermore, in addressing the sufficiency of the evidence, we are always mindful that it is not our role to weigh the

7

evidence or determine the credibility of witnesses; instead, under the standard enunciated in *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979), we "only determine whether a rational trier of fact could have found the defendant guilty of the charged offense beyond a reasonable doubt." (Citation omitted.) *Jackson*, 314 Ga. App. at 272.

The marijuana that one of the narcotics agents saw Flemister throw from his car window was packaged in individual green baggies of the same type as were found in the searched residence, and the police lieutenant testified that, based on his training and experience, baggies of the type found in the residence were commonly used for packaging marijuana for distribution.

> [T]he evidence of the controlled substance in this case being packaged in a manner commonly associated with the sale or distribution of such contraband would authorize any rational trier of fact to infer that [Flemister] possessed [marijuana], a controlled substance, with intent to distribute.

(Citations and punctuation omitted.) *Rutledge v. State*, 224 Ga. App. 666, 668 (1) (482 SE2d 403) (1997). See *Mayo v. State*, 277 Ga. App. 282, 283 (1) (a) (626 SE2d 245) (2006); *Gerlock*, 283 Ga. App. at 230-231 (1); *Williams v. State*, 199 Ga. App. 544, 544-545 (1) (405 SE2d 539) (1991). Accordingly, we conclude that the State met

8

its burden of proof in this case, and the jury was authorized to find Flemister guilty beyond a reasonable doubt of possession of marijuana with intent to distribute. See *Jackson*, 443 U. S. at 319 (III) (B).

2. Flemister next argues that the trial court erred in allowing the police lieutenant to testify on redirect examination that Flemister asked him to retrieve a green jacket from the upstairs closet of the searched residence. According to Flemister, his statement – which linked him to the residence where drugs and drug paraphernalia had been found and contradicted his testimony that he had no belongings there – was inadmissible because it was elicited by the lieutenant in violation of *Miranda*. We are unpersuaded.

> To protect the Fifth Amendment privilege against self-incrimination, *Miranda* requires that, before being interrogated while in police custody, suspects receive warnings that (1) they have the right to remain silent; (2) their statements may be used against them at trial; (3) they have the right to have an attorney present during questioning; and (4) if they cannot afford an attorney, one will be appointed for them. Any pretrial statements obtained from a suspect in violation of *Miranda* are inadmissible at trial.

(Citations and punctuation omitted.) *State v. Billings*, 303 Ga. App. 419, 419-420 (693 SE2d 627) (2010). See *Miranda*, 384 U.S. at 478-479 (III), 492 (V). It is

9

undisputed that Flemister, who had been arrested and placed in the back of a patrol car, was in police custody when he requested the green jacket. The question is whether Flemister's request was made in response to being "interrogated" by the lieutenant.[2]

"Interrogation for the purposes of *Miranda* warnings encompasses express questioning and words and actions that officers should know are reasonably likely to elicit an incriminating response from the subject." *Waters v. State*, 281 Ga. 119, 122 (4) (636 SE2d 538) (2006). Furthermore, "[t]he determination of whether an interrogation occurs focuses primarily upon the reasonable perceptions of the suspect

---

[2] The State argues that Flemister's statement about the jacket was admissible, irrespective of whether there was a *Miranda* violation, because it was introduced only to impeach Flemister's testimony that he had no belongings at the searched residence. It is true that "[a] prior inconsistent statement of a criminal defendant is admissible for the limited purpose of impeaching trial testimony of the defendant even though the prior inconsistent statement would otherwise be inadmissible due to *Miranda* violations in defendant's trial." *Hicks v. State*, 256 Ga. 266, 268 (1) (347 SE2d 589) (1986). See *Frazier v. State*, 311 Ga. App. 293, 295 (1) (715 SE2d 712) (2011). But the jury must be "expressly instructed that the evidence is admitted for the purpose of impeachment only, whether or not a request to so charge [is] made, and whether or not any [objections] are made to the charge as given." (Citation and punctuation omitted.) *Askea v. State*, 153 Ga. App. 849, 853 (5) (267 SE2d 279) (1980). See *Eldridge v. State*, 270 Ga. App. 84, 86 (2) (606 SE2d 95) (2004); *Colbert v. State*, 124 Ga. App. 283, 285 (2) (183 SE2d 476) (1971). Because no limiting instruction was given when the lieutenant testified about Flemister's request for a jacket, the lieutenant's testimony cannot be said to have been admitted solely for impeachment. See id.

and not the intent of the officer, although the officer's intent is relevant." (Footnote omitted.) *Logan v. State*, 309 Ga. App. 95, 101 (3) (709 SE2d 302) (2011). In addition to the officer's intent in asking the question, relevant factors for determining whether "under the totality of the circumstances the question was equivalent to 'custodial interrogation' . . . include the context in which the question was asked[] . . . and the relationship of the question to the crime." *Franks v. State*, 268 Ga. 238, 240 (486 SE2d 594) (1997). The trial court's finding as to whether, under the totality of the circumstances, a suspect's statement was made in response to custodial interrogation will not be disturbed on appeal unless clearly erroneous. *Barrett v. State*, 289 Ga. 197, 199 (1) (709 SE2d 816) (2011).

Before trial, the trial court conducted a *Jackson-Denno* hearing,[3] and the police lieutenant testified about his exchange with Flemister regarding the jacket. He testified that he had approached Flemister, who was sitting in the back of a patrol car, explained to him that the jail where he was being transported was cold that time of year and had a shortage of blankets, and asked "him if he wanted a jacket from his house." He denied that his purpose in asking the question was to elicit an incriminating response from Flemister linking him to the searched residence, and

[3] See *Jackson v. Denno*, 378 U.S. 368 (84 SC 1774, 12 LE2d 908) (1964).

11

testified that he never asked Flemister any questions pertaining to the drugs found at the residence or any of the charges being brought against him. According to the lieutenant, he simply assumed that Flemister would want a jacket "[b]ecause it's very cold at the Sheriff's Department in the holding cells and the booking area." Additionally, the lieutenant pointed out that when he asked Flemister about the jacket, he and the other agents had already found paperwork addressed to Flemister and a photograph of him inside the residence. Hence, the lieutenant asked Flemister if he wanted a jacket from "his house" because the lieutenant presumed he lived there.

After hearing from the lieutenant, the trial court found that the lieutenant's question regarding whether Flemister wanted a jacket from his house did not constitute an interrogation and that Flemister's response was voluntary and admissible. In light of the lieutenant's testimony at the *Jackson-Denno* hearing, there was some evidence supporting the trial court's finding that the lieutenant's question was not the functional equivalent of custodial interrogation under the totality of the circumstances, "but merely an initial inquiry into [Flemister's] well-being." *Velazquez v. State*, 282 Ga. 871, 878 (8) (655 SE2d 806) (2008). See generally *Metts v. State*, 270 Ga. 481, 484 (3) (511 SE2d 508) (1999) ("Asking questions normally attendant to arrest and custody is not a 'custodial interrogation' which requires the

12

administration of *Miranda* warnings."); *Bone v. State*, 311 Ga. App. 390, 392 (1) (715 SE2d 789) (2011) (officer's question regarding ownership of car "was not designed to lead to incriminating evidence, but rather to garner information needed to most efficiently remove the car from the side of the road"); *Silverio v. State*, 306 Ga. App. 438, 447 (4) (702 SE2d 717) (2010) (officer's question regarding whether suspect lived at apartment was question normally attendant to arrest and custody and was not interrogation).[4] Consequently, we conclude that the trial court did not err in allowing the State to introduce into evidence Flemister's response to the lieutenant's question regarding a jacket.

3. During his direct examination, the police lieutenant testified that, before the search warrant at the residence was executed, he briefed the other agents participating in the search by telling them that the police had information that Flemister was selling crack cocaine and marijuana at the residence. Flemister asserts that the lieutenant's

_____

[4] It is true that the lieutenant testified that he later wrote down in his police report that Flemister had requested a jacket just in case the matter "c[a]me up later on, . . . if he tried to say that the house was not his. That he didn't know what was inside the house." But the fact that the lieutenant was careful to memorialize in writing what he saw and heard does not mean that, at the time he made the offer to retrieve a jacket for Flemister, he did so with the aim of eliciting an incriminating response or had any reason to believe that Flemister would later deny living at the house that contained paperwork and a photograph clearly linking him to it.

13

testimony constituted inadmissible hearsay and impermissibly injected his character into evidence. See, e. g., *Smoot v. State*, __ Ga. App. __, __ (1) (Case No. A12A0627, decided June 5, 2012); *Britton v. State*, 257 Ga. App. 441, 443 (1) (571 SE2d 451) (2002). But Flemister's trial counsel failed to object to the testimony. Any claim of error regarding the admission of the testimony thus has been waived for purposes of appeal. See *Sanders v. State*, 290 Ga. 445, 448 (3) (721 SE2d 834) (2012) (failure to object to bad character evidence waives appellate review of its admissibility); *Jeffers v. State*, 290 Ga. 311, 314 (4) (a) (721 SE2d 86) (2012) (failure to object to hearsay testimony waives appellate review of its admissibility).

4. Flemister also maintains that his trial counsel rendered ineffective assistance in several respects.

> [I]n order to prevail on such a claim of the ineffective assistance of counsel pursuant to *Strickland v. Washington*, 466 U.S. 668 (104 SC 2052, 80 LE2d 674) (1984), a criminal defendant must demonstrate that his counsel's performance was deficient and that, but for such deficiency, there is a reasonable probability that the outcome of the proceeding would have been different; on appeal, this Court is to accept the trial court's factual findings and credibility determinations unless they are clearly erroneous, but it is to independently apply the legal principles to the facts.

14

(Citation omitted.) *Johnson v. State*, 290 Ga. 382, 383 (2) (721 SE2d 851) (2012).

(a) Flemister first contends that his trial counsel was ineffective for failing to object to the police lieutenant's testimony, discussed supra in Division 3, that before the search warrant was executed, he briefed the other agents by telling them that the police had information that Flemister was selling crack cocaine and marijuana at the residence. He argues that an objection was warranted and would have been sustained because the lieutenant's testimony was hearsay, impugned his character, and had the highly prejudicial effect of linking him to the residence used as a "smokehouse."

We need not resolve whether Flemister's trial counsel was deficient in failing to object to the lieutenant's testimony. Considering all of the evidence introduced in this case, we conclude that even if trial counsel had objected, there is no reasonable probability that the outcome of the trial would have been different. In this respect, there was other evidence introduced at trial that drew a strong connection between Flemister and the residence used as a "smokehouse." The evidence included the lieutenant's testimony about Flemister's car having been observed at the residence on several occasions before the day of the search, about the business letter and divorce decree belonging to Flemister that were found in the living room, and about Flemister's request that his green jacket be retrieved from the upstairs closet.

15

Additionally, the lieutenant testified that the green baggies containing the marijuana that Flemister had thrown from his car were the same as the baggies found in the residence.

Given the strength of the evidence linking Flemister to the residence, he cannot demonstrate that he was prejudiced by his trial counsel's failure to object to the lieutenant's testimony. The trial court, therefore, did not err in concluding that Flemister could not succeed on his ineffective assistance claim. See *Martinez v. State*, 303 Ga. App. 166, 172 (4) (692 SE2d 766) (2010) ("If the defendant cannot satisfy either of the two prongs of the *Strickland* test, his ineffective assistance claim fails.") (citation omitted).

(b) Flemister next asserts that his trial counsel was ineffective for failing to object to the lieutenant's testimony that the residence appeared to be a "smokehouse" where people would buy drugs and stay to consume them. According to Flemister, the lieutenant's testimony was improper opinion evidence that invaded the province of the jury and had the effect of impugning his character because he had been tied to the residence through other evidence.

Flemister cannot succeed on his ineffective assistance claim because he cannot overcome the strong presumption that his trial counsel's decision not to object was

16

a matter of reasonable trial strategy, and thus cannot show that his counsel was deficient under the first prong of *Strickland*. "Trial tactics and strategy, no matter how mistaken in hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." (Punctuation and footnote omitted.) *Gray v. State*, 291 Ga. App. 573, 579 (2) (662 SE2d 339) (2008). Moreover, if trial counsel does not testify at the new trial hearing or is unable to recall anything specific about the matter at issue, "it is extremely difficult to overcome the presumption that counsel's conduct resulted from reasonable trial strategy." (Citation and punctuation omitted.) *Brown v. State*, 288 Ga. 902, 908 (5) (708 SE2d 294) (2011).

Flemister's lead trial counsel did not testify at the hearing on his motion for new trial.[5] His second-chair trial counsel testified that he did not know and would have to speculate as to why lead counsel, who had handled the examination of the lieutenant and had been the one to interpose objections when necessary, had chosen not to object to the testimony regarding the "smokehouse." Under these circumstances, "any decision not to object [must be] presumed to be a strategic one."

[5] After the trial, lead trial counsel suffered a stroke and was not in a condition to testify at the new trial hearing.

17

*Tyner v. State*, 313 Ga. App. 557, 565 (6) (c) (722 SE2d 177) (2012). Thus, the only remaining question under the first prong of *Strickland* is whether that decision was so patently unreasonable that no competent attorney would have decided to forego making the objection. See *Brown*, 288 Ga. at 909 (5).

It is entirely reasonable for an attorney to make the strategic decision not to object at every opportunity. See *Collier v. State*, 303 Ga. App. 31, 34-35 (3) (692 SE2d 697) (2010). A competent attorney could have concluded that the better strategy in this case was to forego contesting that the residence in its current condition was a "smokehouse," and instead focus the jury's attention on whether Flemister had any present connection to the residence. Indeed, an examination of the trial record as a whole suggests that this was in fact the defense's overall trial strategy. Accordingly, Flemister cannot prove that his counsel was deficient, and the trial court properly rejected his ineffective assistance claim.

(c) Flemister also argues that his trial counsel was ineffective for failing to move to suppress the business letter and divorce decree found in the living room of the searched residence. He contends that the documents were "private papers" not subject to search or seizure and thus would have been suppressed, had a proper motion been brought by his trial counsel.

18

"When trial counsel's failure to file a motion to suppress is the basis for a claim of ineffective assistance, the defendant must make a strong showing that the damaging evidence would have been suppressed had counsel made the motion." (Citation and punctuation omitted.) *Dade v. State*, 292 Ga. App. 897, 901 (666 SE2d 1) (2008). Flemister has failed to make such a showing. Georgia law authorizes the seizure of "private papers" only under certain circumstances. See OCGA § 17-5-21 (a) (1), (a) (5), (b); *Brogdon v. State*, 287 Ga. 528, 529-530 (2) (697 SE2d 211) (2010). Significantly, however, "private papers" include "diaries, personal letters, and similar documents wherein the author's personal thoughts are recorded," but not mere public records or business or financial documents that do not contain personal thoughts. *Smith v. State*, 192 Ga. App. 298 (384 SE2d 459) (1989) (checks, deposit slips, and business letters were not "private papers"). See *Ledesma v. State*, 251 Ga. 885, 890 (7) (a) (311 SE2d 427) (1984) (deposit slips, business license, and employment contract were not "private papers"). Hence, the business letter and divorce decree at issue here did not fall within the category of "private papers," and they would not have been suppressed even if trial counsel had filed a motion to suppress them. It follows that the trial court committed no error in denying

19

Flemister's ineffective assistance claim on this ground. See *Dade*, 292 Ga. App. at 901.

(d) Flemister further argues that his trial counsel was ineffective for failing to pursue a motion to suppress the crack cocaine and firearm found in his car and the marijuana thrown onto the street. He maintains that the special agents lacked articulable suspicion or probable cause to stop his car and detain him, and that, as a result, the stop and detention were unconstitutional and all subsequently seized evidence was tainted as fruit of the poisonous tree. Thus, he contends that the trial court would have suppressed the marijuana, crack cocaine, and firearm, if his trial counsel had filed a motion to suppress them.

Police officers are authorized to stop a vehicle and temporarily detain a suspect if they have "specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct." *Jones v. State*, 314 Ga. App. 107, 108 (722 SE2d 918) (2012). The arrest of a suspect must be based on probable cause and

> is constitutionally valid if, at the moment the arrest is made, the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the accused had committed or was committing an offense.

20

(Citations and punctuation omitted.) *Davis v. State*, 304 Ga. App. 355, 357-358 (1) (a) (696 SE2d 381) (2010). When these standards are applied to the case at hand, it is clear that the stop of Flemister's car and his detention by the agents passed constitutional muster.

The record reveals that before obtaining the search warrant for the residence, special agents, through a controlled buy using a confidential informant, learned that drugs were being sold there. As part of the surveillance before the search, agents observed Flemister's car at the residence on multiple occasions. Moreover, the agents stationed outside the residence during the search were provided a physical description of Flemister's car and were told to be on the lookout for it. When Flemister drove by the residence, one of the agents recognized his car, stepped out into the middle of the road, and ordered him to stop, but he kept driving and then threw the marijuana out of his window as a patrol car followed him. After throwing the marijuana out of the window, Flemister stopped his car, and one of the agents detained him.

The agents who stopped Flemister's car after he drove by the residence had articulable suspicion to make the stop, given that they had been briefed on the controlled buy and surveillance conducted at the residence and had been provided with a physical description of Flemister's car. See *In the Interest of H. A.*, 308 Ga.

21

App. 111, 113 (2) (706 SE2d 615) (2011) (articulable suspicion to stop car existed where suspect's car matched description that officers had received in be-on-the-lookout dispatch); *Prado v. State*, 306 Ga. App. 240, 245 (1) (701 SE2d 871) (2010) ("The existence of an articulable suspicion can be based on the collective knowledge of law enforcement officials.") (punctuation and footnote omitted); *Lester v. State*, 226 Ga. App. 373, 375 (1) (487 SE2d 25) (1997) (articulable suspicion existed to stop car based upon controlled buy and information received from informant).[6]

It is unclear from the existing record at what point Flemister was arrested after the stop of his car. But even if Flemister was arrested immediately upon stopping his car, probable cause existed for his arrest. In addition to the facts and circumstances discussed above that provided articulable suspicion for the stop of Flemister's car, the agents observed him ignore a command to stop his car and throw marijuana out of his window before detaining him. These combined facts provided the agents with probable cause to arrest Flemister. See *State v. Deshon*, 194 Ga. App. 425, 425-426

---

[6] We note that even if the agents had lacked articulable suspicion to stop Flemister's car, the marijuana discarded out of the car window before the stop still would have been admissible. See *Gray v. State*, 254 Ga. App. 487, 488 (1) (562 SE2d 712) (2002) (suspect had no expectation of privacy in bag of illegal drugs that he discarded while fleeing from police, even if officers who stopped car acted without articulable suspicion of criminal activity).

22

(390 SE2d 651) (1990) (suspect's attempted flight and throwing of contraband from car supplied officers with probable cause).

For the foregoing reasons, Flemister cannot show that the drugs and firearm would have been suppressed, had his trial counsel filed a motion to suppress. Consequently, he cannot show that his trial counsel was deficient, and the trial court committed no error in denying his ineffective assistance claim. See *Dade*, 292 Ga. App. at 901.

(e) Lastly, Flemister argues that his trial counsel was ineffective by eliciting testimony from the police lieutenant on cross-examination about a controlled buy that had been made at the residence using a confidential informant. However, "[t]he scope of cross-examination is grounded in trial tactics and strategy." (Citation and punctuation omitted.) *Martinez v. State*, 303 Ga. App. 166, 174 (4) (b) (692 SE2d 766) (2010). When read in context, trial counsel's questioning of the lieutenant about the controlled buy was part of a strategy of showing that the police had surveillance equipment at their disposal but had failed to introduce any photographs or audio-visual recordings in this case implicating Flemister in any wrongdoing. Trial counsel's aim clearly was to cast doubt on the State's version of the facts by showing that a faulty investigation had been conducted.

"Substantial latitude is given during judicial review of trial counsel's decisions regarding trial strategy[,] . . . [and] this Court does not evaluate trial counsel's tactics and strategic decisions in hindsight." (Citations and punctuation omitted.) *Billington v. State*, 313 Ga. App. 674, 682 (2) (c) (722 SE2d 395) (2012). Because we cannot say that the strategy devised by Flemister's trial counsel for cross-examining the lieutenant was patently unreasonable under the circumstances presented, the trial court was authorized to deny Flemister's ineffective assistance claim. See *Martinez*, 303 Ga. App. at 172-174 (4) (b); *Evans v. State*, 288 Ga. App. 103, 108-109 (3) (b), (c) (653 SE2d 520) (2007).

*Judgment affirmed. Adams and McFadden, JJ., concur.*