**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be**
**_physically received_ in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**August 26, 2014**

# In the Court of Appeals of Georgia

A14A0828. BOUTIER v. THE STATE.

BARNES, Presiding Judge.

A jury convicted Joel Boutier of aggravated assault and aggravated battery based on evidence that he attacked a fellow inmate at jail. On appeal from the denial of his motion for a new trial, Boutier contends that the trial court erred in declining to charge the jury on the defense of justification and that his trial counsel rendered ineffective assistance. For the reasons discussed below, we affirm.

"Following a criminal conviction, the defendant is no longer presumed innocent, and we view the evidence in the light most favorable to the jury's verdict." *Flemister v. State*, 317 Ga. App. 749 (732 SE2d 810) (2012). So viewed, the evidence showed that Boutier and the victim were inmates at the Fayette County jail, where they were housed in a dormitory-style unit and slept a few bunks away from one another. On May 14, 2009, the victim awoke early in the morning, before detention

officers had come around the unit to wake up the inmates for the day. The victim routinely got up before the other inmates so that he could wash up in the bathroom before a line formed.

After retrieving his toiletries from the drawer under his bunk, the victim began walking to the bathroom. As the victim passed by Boutier's bunk, Boutier jumped up and began shouting at him for making too much noise. The victim responded that he was not making much noise and that the officers would be waking up the inmates soon anyway. Following his exchange with Boutier, the victim continued to the bathroom and washed up for the day.

After washing up in the bathroom, the victim returned to his bunk bed. Boutier suddenly came over to the victim's bunk and lunged at him with his fists, striking the victim in the jaw. Boutier got behind the victim, grabbed him by the neck, and began scratching and clawing at his face. The victim struggled and tried to break free from Boutier, and both of them fell to the floor. Boutier then stuck his finger in the victim's mouth and ripped the skin around the victim's lip, causing a deep gash. The wound was approximately one-and-a-half inches long and bled profusely. The victim had to receive over ten stitches to repair the damage, and the wound left a permanent scar.

A short while after the attack on the victim, a sheriff's deputy interviewed Boutier in a medical exam room, where a nurse was treating the victim for his injuries and Boutier was waiting to be treated for a "mild abrasion or a cut above one eye in the eyebrow area." Boutier agreed to the interview after being advised of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966). During the interview, Boutier told the deputy that he had been having repeated problems with the victim getting up early in the morning, making some noise, and waking him up. According to Boutier, he had asked the jail staff to move him, and in response, the staff had provided him with a bunk further away from the victim but still in the same housing unit. Boutier told the deputy that even after he had been moved to a different bunk, the victim was still waking him up in the mornings, and so he decided he "would take care of the matter" himself because "nothing else [was] going to be done by the staff." Boutier admitted to the deputy that he had "attacked" the victim and had torn his lip area with his finger.

Boutier thereafter was indicted on charges of aggravated assault and aggravated battery. At the ensuing jury trial,[1] the victim and the sheriff's deputy who

---

[1] Because Boutier was tried in 2010, the new Georgia Evidence Code does not apply to any of the evidentiary issues discussed in this case. See Ga. Laws 2011, Act 52, § 101 ("This Act shall become effective on January 1, 2013, and shall apply to

interviewed Boutier testified to the events as summarized above. Another detention officer testified regarding the injuries he had observed on the victim after the attack, and the State also introduced photographs of the victim's wounds. Boutier elected not to testify and did not call any defense witnesses.

Following the close of the evidence, Boutier requested a jury charge on the defense of justification, which the trial court denied. Subsequently, after the charge of the court, the jury found Boutier guilty of both offenses. Boutier then filed a motion for a new trial and, upon being appointed new counsel, amended his motion to claim that his trial counsel had rendered ineffective assistance. After conducting a hearing in which Boutier's trial counsel testified, the trial court denied the motion for a new trial. This appeal followed.

1. Boutier contends that the trial court erred in declining to charge the jury on the defense of justification. We disagree.

> Under Georgia law, a person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to defend himself or herself against such other's imminent use of unlawful force.

any motion made or hearing or trial commenced on or after such date.").

4

(Citation and punctuation omitted.) *Jackson v. State*, 316 Ga. App. 588, 594 (5) (a) (730 SE2d 69) (2012). See OCGA § 16-3-21 (a). However, "a person is not justified in using force in self-defense if he is the initial aggressor or engages in mutual combat, unless he withdraws from the encounter and notifies the other participant that he is doing so." (Citation and punctuation omitted.) *Muckle v. State*, 307 Ga. App. 634, 637 (1) (a) (705 SE2d 721) (2011). "It is not error to refuse a justification charge where there is no evidence to support it." (Citation and punctuation omitted.) *Jackson*, 316 Ga. App. at 594 (5) (a).

Boutier declined to testify at trial or present any defense witnesses to support a justification defense, and his cross-examination of the State's witnesses did not reveal any evidence that would support a defense of justification. Instead, all of the evidence presented at trial pointed to Boutier as the initial aggressor who violently attacked the victim because he believed the victim was making too much noise. And, contrary to Boutier's assertion in his brief, the detention officer's testimony that Boutier had a "mild abrasion or a cut" over one of his eyes, without more, clearly was insufficient to support a justification charge. Accordingly, the trial court committed no error in declining to charge the jury on the defense of justification, given that there was no evidence to support it. See *Jackson*, 316 Ga. App. at 594 (5) (a) (charge on

5

justification defense not warranted where uncontroverted evidence showed that defendant was initial aggressor and did not communicate a withdrawal); *Park v. State*, 230 Ga. App. 274, 278 (4) (495 SE2d 886) (1998) (same).

2. Boutier also contends that his trial counsel was ineffective in several respects. To prevail on his claim of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984), Boutier "must show both that his counsel performed in a professionally deficient manner and that there is a reasonable probability that, but for such deficiency, the result of his trial would have been different." *Smith v. State*, 292 Ga. 620, 621 (2) (740 SE2d 158) (2013). If Boutier fails to prove either prong of the *Strickland* test, we need not address the other prong. *Russell v. State*, 322 Ga. App. 553, 556 (3) (b) (745 SE2d 774) (2013). Guided by these principles, we turn to Boutier's specific allegations of ineffective assistance.

(a) As previously noted, a sheriff's deputy interviewed Boutier in a medical exam room shortly after the attack. The deputy audio recorded the interview. At trial, the deputy summarized what Boutier said to him during the interview, but neither the State nor Boutier's counsel sought to introduce the audio recording. On appeal, Boutier contends that his trial counsel was ineffective for failing to introduce the

audio recording of the interview to impeach the deputy's testimony about what was said during the interview and to bring out all of the material details of the interview before the jury. See generally *Westbrook v. State*, 291 Ga. 60, 62 (2) (727 SE2d 473) (2012) (discussing introduction of evidence under "rule of completeness," which provides that "if part of a conversation is introduced, all that is said in the same conversation which is relevant to the issue should be admitted"); *Cade v. State*, 289 Ga. 805, 810 (6) (716 SE2d 196) (2011) (discussing admission of audio recordings for impeachment purposes). According to Boutier, he was prejudiced by his trial counsel's failure to introduce the audio recording because he made statements during the recorded interview that were not mentioned or were contradicted by the deputy during his trial testimony and that would have supported a jury charge on the defense of justification.

Boutier has failed to prove either deficient performance or prejudice resulting from his counsel's decision to forego introducing the audio recording of the interview. In the audio recording of the interview introduced at the hearing on his motion for new trial,[2] Boutier can be heard telling the sheriff's deputy that the victim

_____

[2] A transcript of the audio-recorded interview also was introduced at the new trial hearing for demonstrative purposes only. There were no material disagreements between the State and Boutier over the accuracy of the interview transcript.

7

had awakened him "every night for a long time" and had previously taunted him about waking up from the noise. Boutier explains to the deputy that on the morning in question, the victim had approached him, laughed at him, and taunted him over the fact that he had been awakened again by the noise by calling him "crazy" and telling him "it [was] time to get up." Boutier goes on to admit that the victim "just kept on egging [him] on, and that is when [he] attacked [the victim]." Boutier further tells the deputy that he "grabbed [the victim] and fish hooked him, like his cheek" to make the cut. When the deputy asks Boutier if the victim had hit him "at any point during the altercation," Boutier responds that the victim "tried to" but was unsuccessful.

At the new trial hearing, Boutier's trial counsel testified that he had reviewed the audio recording before trial and had chosen not to introduce it because of the damaging admission made by Boutier during the interview. Decisions regarding what evidence to introduce are matters of trial strategy, see *Serrate v. State*, 268 Ga. App. 276, 278 (2) (c) (601 SE2d 766) (2004), and "[t]rial tactics and strategy, no matter how mistaken in hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." (Citation and punctuation omitted.) *Flemister v. State*, 317 Ga. App. 749, 757 (4) (b) (732 SE2d 810) (2012).

8

We cannot say that trial counsel's strategic decision to forego introducing the audio recording of the interview was patently unreasonable. Boutier admits during the recorded interview that he "attacked" the victim and "fish hooked" his mouth, causing the severe cut, merely because the victim taunted him about awakening from the noise. A reasonable defense attorney could have concluded that playing the actual audio recording, after the deputy's testimony summarizing the interview, would only have emphasized Boutier's damaging admission to the jury. Accordingly, Boutier cannot show that his trial counsel was deficient. See *Dixon v. State*, 275 Ga. 232, 234 (5) (564 SE2d 198) (2002) (decision to forego introducing recorded statements for impeached purposes was reasonable trial strategy).

Nor can Boutier show that the failure to introduce the audio recording caused him any prejudice. While Boutier claims that his statements to the sheriff's deputy during the recorded interview would have supported a charge on the defense of justification and could have led the jury to acquit him based on that defense, we are unpersuaded. Boutier does tell the deputy in the interview that the victim had teased him about waking up from the noise that morning, but verbal insults and taunts are insufficient, without more, to warrant a justification charge. See *Glenn v. State*, 253 Ga. App. 333, 334 (559 SE2d 86) (2002) (fact that victim "offered some words" or

9

"said some cuss words" to the defendants before the assault was insufficient to support justification charge, where there was no evidence that the victim attempted to harm or made any "verbal threats to do physical harm" to the defendants); *Carter v. State*, 150 Ga. App. 119, 120 (4) (257 SE2d 11) (1979) (fact that victim and defendant "got into an argument" and "insults were exchanged" did not warrant charge on defense of justification). Moreover, while Boutier states in the recorded interview that at some point during the altercation the victim unsuccessfully tried to hit him, he also makes clear that he was the one who "attacked" the victim. Thus, the recorded interview reflects that Boutier was the initial aggressor, and there is no evidence that he made any effort to communicate a withdrawal from the encounter at any point; as such, he would not have been entitled to a charge on the defense of justification based on the recording. See *Park*, 230 Ga. App. at 278 (4) (justification charge not warranted where uncontradicted evidence showed that defendant "was the aggressor and . . . made no effort to communicate a withdrawal from the encounter"). Accordingly, Boutier cannot show that there is a reasonable probability that, if his trial counsel had introduced the audio recording, the outcome of the trial would have been different. It follows that the trial court committed no error in denying Boutier's ineffective assistance claim on the asserted ground.

(b) Boutier also claims that his trial counsel was ineffective for failing to introduce photographs of him that were taken on the day of the altercation that showed injuries to the left side of his face. Boutier points out that his trial counsel testified at the new trial hearing that he had no strategic reason for failing to introduce the photographs. Boutier further suggests that the photographs would have buttressed his argument before the trial court that he was entitled to a charge on the defense of justification and would have given the jury a more accurate understanding of the altercation.

Boutier cannot show that his trial counsel was deficient for failing to introduce the photographs. In his recorded interview with the sheriff's deputy, Boutier states that the victim never hit him and indicates that his facial injuries were caused by another detention officer who "slammed [his] face against the wall" while he was in the intake cell after his altercation with the victim. Because the photographs were of injuries sustained by Boutier only after his altercation with the victim, the photographs were irrelevant to the material issues at trial and thus would have been inadmissible. Consequently, Boutier's trial counsel was not deficient for failing to attempt to introduce the photographs. See *Barrett v. State*, 292 Ga. 160, 173 (3) (c) (1) (733 SE2d 304) (2012) (attorney is not deficient for failing to discover and

11

present irrelevant and inadmissible evidence); *Sevostiyanova v. State*, 313 Ga. App. 729, 732 (2) (722 SE2d 333) (2012) (failure to attempt to introduce photographs of rental car taken after the incident in question did not constitute deficient performance because the photographs were "irrelevant to the issues at trial").

In any event, Boutier cannot show that he suffered any prejudice as a result of the failure to introduce the photographs. During his cross-examination of the sheriff's deputy at trial, Boutier's trial counsel elicited testimony from the deputy that Boutier had "a mild abrasion or cut above one eye in the eyebrow area" and a "small amount" of blood. (Notably, trial counsel did not ask the deputy how Boutier received those injuries, so the jury was unaware that the injuries occurred after his attack on the victim.) Because the jury was made aware that Boutier had injuries to his face, we cannot say that there is a reasonable probability that the outcome of the trial would have been different if the photographs of his facial injuries had been introduced, and thus Boutier cannot succeed on his ineffective assistance claim. See *Gibson v. State*, 277 Ga. 486, 488 (2) (591 SE2d 800) (2004) (defendant could not show that the failure to introduce records was prejudicial to his defense, where records would have been cumulative of testimony elicited at trial).

12

(c) Lastly, Boutier contends that his trial counsel was ineffective for failing to move for a mistrial after the victim gave a non-responsive answer to a question on cross-examination. Specifically, after the victim testified that he believed the attack "was premeditated and planned," Boutier's trial counsel attempted to question the victim about his belief, but the victim interrupted him and testified:

> I . . . sincerely – at this point, I – I – in my heart, I believe he premeditatedly waited for me to get up that morning. He already had planned what he was going to do and he – he followed it through. He did it. He knew that he was – *he had gone to court. He wasn't happy with his situation with his family and what happened with his case.*

(Emphasis supplied.) Boutier's trial counsel objected to the victim's testimony but did not move for a mistrial. The trial court then cautioned the victim and instructed him to "listen carefully to the question" and to "answer the question." On appeal, Boutier contends that his trial counsel was deficient for failing to move for a mistrial and that he suffered prejudice because the victim's reference to Boutier's "case" and "his situation with his family" suggested to the jury that Boutier was a violent person and had committed a crime against his family.

To succeed on this ineffective assistance claim, Boutier must make a strong showing that if his trial counsel had moved for a mistrial, the trial court would have

13

abused its discretion if it denied the motion. See *Paige v. State*, 277 Ga. App. 687, 691 (4) (a) (627 SE2d 370) (2006). Cf. *Boykins-White v. State*, 305 Ga. App. 827, 831 (4) (701 SE2d 221) (2010) (to prove that trial counsel was ineffective for failing to file a motion to suppress, the defendant must make a "strong showing" that the motion would have been granted). "[A] mistrial is warranted only if essential to preserve a defendant's right to a fair trial, and the trial court is vested with broad discretion in making this determination." *Mister v. State*, 286 Ga. 303, 306 (3) (687 SE2d 471) (2009).

Boutier cannot succeed on his claim of ineffectiveness. Nothing in the victim's testimony indicated to the jury that Boutier was in jail for a violent crime, much less that the crime had been against his family. Moreover, even if the victim's testimony could be construed as referring to Boutier's character, "a nonresponsive answer that impacts negatively on a defendant's character does not improperly place the defendant's character in issue" so as to mandate the grant of a mistrial. (Citations and punctuation omitted.) *Carr v. State*, 282 Ga. 698, 701-702 (3) (653 SE2d 472) (2007). In any event, the jury, of course, already knew that Boutier had a criminal history, given that the attack at issue occurred in jail among two inmates. Consequently, Boutier has failed to make a strong showing that the trial court would have abused its

discretion by denying a requested mistrial, and thus he cannot prevail on this ineffective assistance claim. See *Paige*, 277 Ga. App. at 691 (4) (a).

*Judgment affirmed. Boggs and Branch, JJ., concur*.

15