## A08A2264. EPPS v. THE STATE.
### (676 SE2d 791)

ADAMS, Judge.

Michael Perry Epps was convicted by a jury on one count of kidnapping with bodily injury, one count of robbery, and one count of aggravated assault. He appeals following the denial of his motion for new trial.

Viewed in the light most favorable to the verdict, the evidence showed that on March 15, 2002, Rick Morrow went to a bar in Douglas County to have drinks with a friend. Over the next few hours, Morrow continued drinking and became, in his own words,

"very drunk." At around 12:15 a.m., he began to feel sick, so he left the bar and went outside where he sat on a curb to compose himself. Almost immediately, he was approached by a man who identified himself as a policeman, grabbed Morrow's arm and told him he was under arrest. When Morrow noticed the man was not dressed like a police officer, he pulled his arm away. The man then admitted that he was not a policeman and said he was just someone who wanted to help Morrow get home.

The man ushered Morrow off the curb and directed him to a waiting car. Morrow said that he did not get into the car voluntarily, but the man pushed him inside onto the back seat and then got in beside him. Two women were in the front seat. Morrow heard the door slam, and the car began pulling out of the parking lot. Almost immediately, Morrow felt a hand go into his pocket, and he reflexively grabbed at his pants. The man then began hitting him repeatedly, but Morrow said he was not able to put up any resistance. Morrow said this beating, which he described as brutal, continued for about five minutes. The man then put Morrow in a headlock and took his wallet, watch, car keys and cash from his pocket. Morrow subsequently identified Epps from a photographic lineup as the man who shoved him in the car, beat him and took the items from his pocket. The charges of robbery and assault against Epps arise from these incidents.

Morrow was later driven to a bank in Cobb County, where Epps took him to an automated teller machine (ATM) and directed him to withdraw money. He said he felt compelled to comply. They returned to the car and rode around for a time, but Morrow was again taken to the ATM where he withdrew additional funds. By this time, however, Morrow had composed himself sufficiently to run away when the man turned his back. He hid in some bushes for a while before calling police. The evidence showed that the first of these ATM withdrawals occurred at approximately 2:50 a.m. and the last successful transaction was completed shortly after 3:00 a.m. Because the robberies at the ATM occurred in a different county, they were not at issue at trial and are not a part of this appeal.

Epps was indicted in connection with this incident, along with Lisa Ellen Roddy and Mary Elizabeth Austin. Roddy and Austin both pled guilty and testified for the State at Epps' trial. Austin stated that she was at the bar that night with Epps and Roddy. When they left the building, Roddy and Austin got into Roddy's car, and Epps came to the car with Morrow. Austin understood that they were going to give Morrow a ride home. As they drove away, however, Austin began to hear the sounds of Epps hitting Morrow coming from the back seat. She turned around and screamed at him to stop.

Roddy testified that at the time of these incidents, she was Epps' girlfriend. She went with Epps and Austin to the bar that night. When they came outside, she got in her car and started the engine. Epps, Austin and Morrow then got in the car, although she did not know who Morrow was at the time. As she drove away, Austin told her that Epps was hitting Morrow, and they both began yelling at him to stop. Someone from the back seat told her to drive to an ATM, so she did. She then nodded off and did not wake up until she heard Austin screaming at Morrow to run. She also testified that Epps later gave her a letter exonerating her from any illegal activity, and stating that he did everything on his own without her knowledge.

Sergeant Jamie Harrell of the Douglas County Sheriff's Office testified that after Epps was arrested, he admitted that he was at the bar that night with Roddy and Austin. Harrell said that the bar and all its surrounding buildings are in Douglas County.

1. Epps first asserts that the evidence was insufficient to support his conviction for kidnapping as that offense was re-formulated by the Supreme Court of Georgia in *Garza v. State*, 284 Ga. 696 (670 SE2d 73) (2008). In addition, Epps asserts that the State failed to prove that Douglas County was the proper venue in which to try him for that offense, arguing instead that any kidnapping would have been consummated in Cobb County.

"A person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against his will." OCGA § 16-5-40 (a). To prove abduction, the State must prove the element of asportation, but our Supreme Court recently re-defined that element in *Garza*. Under the new definition, a finding of asportation requires an assessment of the following four factors:

> (1) the duration of the movement; (2) whether the move-
> ment occurred during the commission of a separate offense;
> (3) whether such movement was an inherent part of that
> separate offense; and (4) whether the movement itself
> presented a significant danger to the victim independent of
> the danger posed by the separate offense.

*Garza v. State*, 284 Ga. at 702 (1). Slight movement no longer suffices. Id.

Epps argues that the evidence does not support his conviction for kidnapping when these factors are applied. He asserts that there was some evidence that Morrow got into the car voluntarily; that the evidence did not show how long he was in the vehicle; that the kidnapping occurred during and was an inherent part of the robbery and assault; and that there was no evidence that he was in any

danger apart from those offenses.

We disagree. The evidence supported a finding that Morrow left the bar at 12:15 a.m. Almost immediately, he was forced or, at the very least, tricked into Roddy's car by Epps. Once in the car, Morrow stated that he felt a hand in his pocket as the car began to move. When he resisted, Epps beat him for around five minutes, then put him in a headlock and stole his wallet and cash. Although these incidents occurred shortly after Morrow was placed in the car, the first of the ATM withdrawals was not until 2:50 a.m., more than two and one-half hours after Epps first approached Morrow. Even if Epps initially abducted Morrow in order to facilitate robbing him, the evidence would support a finding that Epps held Morrow for a significant period after the initial assault and robbery were completed. Although Morrow was again robbed and beaten at the ATMs, those crimes occurred after he had been detained for a period of time.

Moreover, this detention subjected Morrow to a danger separate and apart from the dangers inherent in the robbery and assault. Roddy testified that before she got to the bar that night she had ingested a quantity of Xanax. When they got to the bar, she continued to take Xanax and to consume alcohol to the point that she was "stoned." Despite this, she drove the car that night. When they got to the bank, Roddy nodded off and did not wake up until she heard Austin screaming. And at some point during the night, Roddy wrecked the car. She explained, "I don't know when I wrecked it. I don't even remember hitting the wall. I guess I hit a wall because that's what they told me, that I hit a wall." Not only did Morrow's detention in the car make it easier for Epps to commit the assault and robbery, it also placed him at risk of physical harm from the driver's intoxicated state. This danger was independent of any assault or robbery. Applying the *Garza* test, we find the evidence sufficient to establish the offense of kidnapping as a separate and independent crime. See generally *People v. Lurks*, 241 Ill. App. 3d 819, 826 (609 NE2d 894) (1993) (applying same factors adopted in *Garza*).

Epps also asserts, however, that the State failed to establish that Douglas County was the proper venue for the prosecution of that crime. Sergeant Harrell testified that the bar and all the buildings surrounding it were in Douglas County, although the bar was situated near the county line with Cobb County. While Roddy eventually drove the car to an ATM in Cobb County, there was no evidence of the route taken between the bar and that ATM.

But under OCGA § 17-2-2 (e) where, as here, a crime is committed in a moving vehicle, "and it cannot readily be determined in which county the crime was committed, the crime shall be considered as having been committed in any county in which the crime could

have been committed through which the . . . vehicle . . . has traveled." That statute also provides that "[i]f in any case it cannot be determined in what county a crime was committed, it shall be considered to have been committed in any county in which the evidence shows beyond a reasonable doubt that it might have been committed." OCGA § 17-2-2 (h).

Accordingly, although the precise moment when Morrow's abduction became kidnapping under the *Garza* analysis cannot be determined with certainty, "venue may be proved by circumstantial evidence and it was a question for the jury." *Pruitt v. State*, 279 Ga. 140, 143 (4) (611 SE2d 47) (2005). The trial court here instructed the jury as to venue and specifically charged them as to provisions of OCGA § 17-2-2 (e) and (h). Accordingly, because the evidence was sufficient to support a finding that the kidnapping might have been committed in Douglas County, we find no ground for reversal. Id.

2. Epps next asserts that the trial court erred in charging the jury on venue using the "shall be considered" language from OCGA § 17-2-2 (e) and (h) quoted in Division 1 above. Epps asserts that this created a mandatory presumption impermissibly shifting the burden of persuasion on venue to him. He notes that the Supreme Court of Georgia has held that the better practice is to charge the jury on this point using the language "may consider" rather than "shall consider." *Napier v. State*, 276 Ga. 769, 772-773 (2) (583 SE2d 825) (2003). But the Supreme Court addressed this same argument in a subsequent case, and it found that no improper burden shifting occurred where the trial court also charged the jury "that each element of a crime must be proved beyond a reasonable doubt; that venue is an element of any crime; that the State has the burden of proof on each element; and that such burden never shifts to the defendant." *Edmond v. State*, 283 Ga. 507, 509 (4) (661 SE2d 520) (2008). The trial court in this case also charged on these factors. We find, therefore, that the charge in this case, when considered as a whole, was not misleading or confusing, nor did it impermissibly shift the burden to Epps on the element of venue. Id.

3. Epps also contends that his conviction for aggravated assault merged as a matter of fact into his conviction for robbery and/or into his conviction for kidnapping with bodily injury based upon the indictment and evidence at trial. He argues that the same facts were required to prove each crime. Epps also asserts that his conviction for robbery merged into his conviction for kidnapping for the same reason. "Under OCGA § 16-1-6 (1), two offenses will merge as a matter of fact if one of them is established by proof of the same or less than all the facts required to prove the other." (Citation omitted.) *Keown v. State*, 275 Ga. App. 166, 169 (2) (620 SE2d 428) (2005). Here, the State concedes that the assault and robbery

charges merge as a matter of fact, and that each merged into the conviction for kidnapping. Accordingly, the aggravated assault and the robbery convictions are hereby vacated.

*Judgment affirmed in part and vacated in part. Smith, P. J., and Mikell, J., concur.*

DECIDED MARCH 26, 2009.

*Virginia W. Tinkler*, for appellant.
*David McDade, District Attorney, James A. Dooley, Assistant District Attorney*, for appellee.