## A10A0115. WILLIAMS v. THE STATE.
(697 SE2d 911)

BERNES, Judge.

Following a jury trial, Oliver Twist Williams was convicted of two counts of armed robbery, two counts of kidnapping, five counts of aggravated assault, five counts of false imprisonment, possession of a firearm during the commission of a crime, and possession of marijuana. Williams filed a motion for a new trial, which the trial court denied. On appeal, Williams contends that the evidence of asportation was insufficient to sustain his kidnapping convictions and that the trial court erred in admitting improper character evidence regarding his marital status. We agree that Williams's kidnapping convictions must be reversed. Williams's remaining convictions, however, are affirmed.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence. We do not weigh the evidence or judge the credibility of the witnesses, but determine only whether the evidence authorized the jury to find the defendant guilty of the crimes beyond a reasonable doubt in accordance with the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

(Citation omitted.) *Hill v. State*, 298 Ga. App. 677 (1) (680 SE2d 702) (2009).

So viewed, the evidence adduced at trial shows that on March 21, 2006, at approximately 9:10 a.m., Williams entered a Bank of America located in Carrollton. Williams was wearing dark clothing, a hooded sweatshirt that covered his head, a bandana that covered his face, latex gloves, and muddy boots. He was carrying a loaded gun and a black bag.

Williams went to an office in the bank, where a bank employee was meeting with a customer. Williams pointed his gun at the bank employee and customer and ordered them to "[g]et [their] hands up" and to get out of the office. Williams moved them to the bank's main lobby, where the other occupants of the bank were located. Williams pointed his gun at the bank's customers and tellers and shouted, "Get down, get down, get down," ordering everyone to get on the floor. Williams then pointed his gun at the tellers and ordered them to put money in his bag. After Williams collected money from all of the open teller stations, he grabbed his bag and fled from the bank.

The owner of a business located across the street from the bank observed Williams running behind his building. The business owner

became suspicious, noticing that Williams was crouching down, holding a bag, and wearing a hood covering his head. He continued to watch as Williams ran behind a nearby gym. The business owner reported his observations to police.

An instructor at the gym was teaching a water aerobics class when she observed Williams come into the pool area located behind the gym. Williams was carrying a bag and appeared to be lost. Williams wandered around the enclosed pool area, then exited through a side door into the gym's parking lot. Williams later came back into the pool area and went inside the gym.

After the bank robbery was reported, local law enforcement officers were dispatched to the scene. The armed robbery had been captured by the bank's surveillance cameras, and the investigators were given the disk and photographs depicting the perpetrator during the commission of the crimes. A bank teller positively identified Williams as the perpetrator, stating that she recognized him since he was a bank customer and had been in the bank several times prior to the incident.

A crime scene technician observed a muddy trail of footprints leading from the inside of the bank's door to an office and to the teller area of the main lobby. The crime scene technician also observed a muddy trail of footprints leading from the bank's walkway to the area behind the gym, where Williams had reportedly fled. A pair of latex gloves were found in a trash can in the gym's pool area.

The officers searched the gym, but Williams was not located at that time. The instructor who had observed Williams in the pool area gave a description to the officers. Based upon the instructor's description, the gym's manager was able to retrieve Williams's photographic identification from the gym's membership database. The instructor positively identified Williams upon viewing his photograph. The gym manager informed the officers that Williams attended the gym regularly, and log-in records showed that Williams and his girlfriend had come to the gym at 9:00 that morning. The gym manager further stated that she had observed Williams's girlfriend praying and crying uncontrollably in the ladies' locker room following their arrival.

The officers obtained a warrant authorizing the search of Williams's person, his apartment, his vehicle, and his girlfriend's vehicle. During the search of the girlfriend's vehicle, the officers recovered a black bag containing a large sum of money in an amount approximating the $14,586 that had been taken during the armed robbery; a hooded sweatshirt; a bandana; a mask; and a loaded semi-automatic handgun. During the search of Williams's apartment, the officers recovered a box of bullets; a box of latex gloves; and a baggie containing less than an ounce of marijuana.

Williams and his girlfriend were arrested and jointly indicted for the crimes committed during the armed robbery incident. Williams's girlfriend entered a guilty plea to the robbery and testified on behalf of the state at trial. She stated that Williams had informed her of his plan to rob the bank and that he had possession of a gun before they went to the gym that morning. She also stated that Williams had subsequently placed the black bag in the trunk of her vehicle.

1. Williams contends that the evidence was insufficient to sustain his kidnapping convictions since the state failed to prove the element of asportation.

"A person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against his will." OCGA § 16-5-40 (a) (2006). "To prove abduction, the [s]tate must prove the element of asportation[.]" *Epps v. State*, 297 Ga. App. 66, 68 (1) (676 SE2d 791) (2009). In *Garza v. State*, 284 Ga. 696, 701-702 (1) (670 SE2d 73) (2008), the Supreme Court of Georgia adopted a test for determining whether the movement of the victim is sufficient to constitute asportation.[1] The test requires an assessment of the following four factors:

> (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.

*Garza*, 284 Ga. at 702 (1). Assessment of these factors is intended to assist in the determination of "whether the movement in question is in the nature of the evil the kidnapping statute was originally intended to address — i.e., movement serving to substantially isolate the victim from protection or rescue — or merely a criminologically insignificant circumstance attendant to some other crime." Id.

We agree that the evidence of asportation does not support Williams's kidnapping convictions when the factors are applied in this case. Williams's kidnapping convictions were based upon his movement of the bank employee and customer from the office to the floor of the main lobby. Williams's movement of the victims in this

---

[1] Because Williams's appeal was pending when the Supreme Court decided *Garza*, the *Garza* test applies in this case. See *Grimes v. State*, 297 Ga. App. 720, 722 (678 SE2d 167) (2009). We note that the kidnapping statute was amended subsequent to *Garza*. See Ga. L. 2009, p. 331, § 1/HB575. But because the amendment applies to crimes committed on or after the effective date of July 1, 2009, it is inapplicable here. See *Dixon v. State*, 300 Ga. App. 183, 184 (1), n. 3 (684 SE2d 679) (2009).

manner was of minimal duration. The movement did not isolate the victims but, rather, moved them to the same area of the bank where the other occupants and teller stations were located. The movement thus allowed Williams to simultaneously confine and exercise control over the victims during his conduct of the armed robbery. After Williams obtained the money that he had demanded during the armed robbery, he left the bank and the victims' movements were no longer being controlled. Under these circumstances, Williams's movement of the victims was an inherent part of the armed robbery, occurred during and incidental to the armed robbery, and did not enhance the risk that the victims already faced during the armed robbery. Consequently, the victims' movements did not meet the asportation requirement, and Williams's kidnapping convictions must be reversed for insufficient evidence. See *Kollie v. State*, 301 Ga. App. 534, 540 (2) (d) (687 SE2d 869) (2009) (concluding that the movement of the victim from the restaurant's freezer to the office was an inherent part of the robbery and, thus, was not sufficient evidence of asportation).

2. Williams also argues that the trial court erred in admitting improper character evidence regarding his marital status. At trial, over Williams's objection, his girlfriend testified that she was not aware that Williams was married at the time that they were dating. Williams's girlfriend further testified that she and Williams had been dating for several months and that on the night before the armed robbery, Williams had told her that he wanted to marry her and purchase a home for them.

"If evidence is relevant and material to an issue in a case, it is not inadmissible because it incidentally puts the defendant's character in issue." (Citation and punctuation omitted.) *Grady v. State*, 212 Ga. App. 118, 119 (1) (441 SE2d 253) (1994). See also *Givens v. State*, 273 Ga. 818, 821 (2) (546 SE2d 509) (2001). To the extent that the challenged evidence showed Williams's motive for committing the armed robbery and/or his deceit in inducing his girlfriend's cooperation in the plan, it was relevant and admissible.

Moreover, because the evidence establishing Williams's commission of the charged offenses was overwhelming, it is highly probable that the alleged error did not contribute to the guilty verdict. See *Hayward v. State*, 258 Ga. App. 566, 568-569 (1) (b) (574 SE2d 646) (2002).

*Judgment affirmed in part and reversed in part. Barnes, P. J., and Senior Appellate Judge G. Alan Blackburn concur.*

DECIDED JULY 6, 2010.

*James D. Lamb*, for appellant.

*Peter J. Skandalakis, District Attorney, Anne C. Allen, Assistant District Attorney*, for appellee.