## A11A0807. ONUMAH v. THE STATE.
### (721 SE2d 115)

ADAMS, Judge.

Kalu Tumi Owens Onumah was convicted by a jury of six counts of armed robbery, six counts of aggravated assault, six counts of kidnapping, six counts of false imprisonment, one count of obstruction of an officer and one count of possession of marijuana. After merging the aggravated assault convictions with the armed robbery convictions, the trial court sentenced Onumah to life in prison with the possibility of parole on each of the armed robbery counts, twenty years to serve on each kidnapping count, ten years to serve on each of the false imprisonment counts and twelve months to serve on the remaining counts, all to run concurrently. He appeals following the denial of his motion, as amended, for new trial.

1. Onumah first argues that the trial judge erred by finding that she was required to sentence him to life in prison on his armed robbery convictions pursuant to OCGA § 17-10-7 (a). However, this contention has previously been decided adversely to Onumah. *State v. Baldwin*, 167 Ga. App. 737, 739 (3) (307 SE2d 679) (1983); see also *Singleton v. State*, 293 Ga. App. 755, 756-757 (2) (667 SE2d 711) (2008); *Perkinson v. State*, 265 Ga. App. 502, 502-503 (3) (594 SE2d 381) (2004); *State v. Scott*, 265 Ga. App. 387 (593 SE2d 923) (2004).

2. Onumah next argues that his kidnapping convictions must be reversed because, as to each victim, the evidence of asportation was insufficient.

The crimes in this case were committed on April 1, 2009, and Onumah was tried in March 2010. Thus, the trial court correctly

---

charged the jury on this issue pursuant to *Garza v. State*, 284 Ga. 696, 701-702 (1) (670 SE2d 73) (2008), as the post-*Garza* amendment to the kidnapping statute applies only to crimes committed on or after July 1, 2009. OCGA § 16-5-40.

As applicable here, four factors are considered in determining the sufficiency of the evidence of asportation in kidnapping cases. Those four factors are:

> (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.

*Garza*, 284 Ga. at 702 (1).

However, as our Supreme Court has noted "[i]n cases where the *Garza* standard is applicable, this Court has not required the satisfaction of all four factors to establish that asportation has occurred." *Hammond v. State*, 289 Ga. 142, 144 (2) (710 SE2d 124) (2011). Rather, even when the movement is of minimal duration and occurs before or during the commission of other offenses, asportation has been satisfied where the movement is not an "inherent part" of any other offense, and the "movement create[s] an additional danger to the victims by enhancing the control" of the perpetrators. *Tate v. State*, 287 Ga. 364, 366 (1) (a) (695 SE2d 591) (2010). "The test was designed to determine whether the movement was one 'serving to substantially isolate the victim from protection or rescue — or merely a "criminologically insignificant circumstance" attendant to some other crime.' *Garza*, 284 Ga. at 702 (1)." *Wright v. State*, 300 Ga. App. 32, 34 (1) (684 SE2d 102) (2009).

In this case, the evidence showed that on April 1, 2009, four men, two of them carrying guns, entered the Pawn Mart located in Forest Park, Georgia at about 6:00 p.m., which was closing time. At the time they entered there were three employees and three customers in the store. All of the victims except the store manager were in the front part of the store, and they were ordered to get down on the floor; the perpetrators "ushered" them, at gunpoint, into the back office where a safe was located, shut the office door and ordered everyone not to move and to keep their heads down. The store manager, who had been in the office talking on the phone with the district manager when the robbers entered the shop, stepped out of the office toward the front of the store but he too was ordered down on the floor and back into the office. Once everyone was in the office, the store manager was ordered to open the safe, and jewelry and cash were

removed. The perpetrators also took personal belongings, such as wallets, debit cards, jewelry and calculators from some of the people in the store. The perpetrators then left the store, the store manager locked the door and the police were called. About an hour after the robbery, police located black bags containing the items taken from the safe.

Based on these events, Onumah was charged with separate counts of kidnapping for each person in the store at the time of the robbery. As to the five customers and employees who were in the front of the store at the time the robbers entered, it is apparent from both the testimony and videotape of the events that moving those victims into the office was not an "inherent part" of the robbery, but was done to isolate them from outside view and to significantly decrease the chance they could summon assistance. This movement was not necessary to complete the robbery, as the other victim, the store manager, was the person they got to open the safe, and the presence of the other victims in the room was not incidental to the furtherance of the crime. Further, the perpetrators could have taken the victims' belongings when they were forced to the floor after the men entered the store, without moving them into a more isolated space.

Although the question is closer as to the store manager, Jack Butcher, who was already in the office when the robbers entered the store, one camera view on the videotape introduced at trial shows, as stated above, that he came out of the office when the robbers came in, but that they forced him to the floor, and then back into the office where the other victims were also taken. Thus, while he was closer to the office when the perpetrators entered the shop and was moved a shorter distance back into the office than the other victims, he too was forced first to the floor and then back into the office. This movement clearly enhanced the control the robbers had over him and the other victims, and likewise served to prevent him from being observed by someone coming into the shop since the office door was closed after the victims were herded inside, also decreasing his chance of rescue.

Onumah further argues that the victims were not isolated because they were brought into the same space, and cites to *Williams v. State*, 304 Ga. App. 787, 789 (697 SE2d 911) (2010), for the proposition that moving the victims into the same area does not serve to isolate them under the meaning of *Garza*. In *Williams*, the gunman moved two victims from a bank office into the bank lobby, where they were told to sit with the other victims. Id. at 787. Conversely, Onumah and his accomplices moved all of the victims except Butcher from the front area of the pawn shop, where they would have been visible to passers-by and an employee could have

used a "panic button" behind the counter to alert police, to a small back room. And the fact that one of the perpetrators held a gun to the back of one of the employees and asked if she had hit the panic button further suggests that the motive for moving the victims to the back room was specifically to "isolate [them] from protection or rescue." *Garza*, 284 Ga. at 702. Butcher was moved back into the office, which again presented a significant danger to him by isolating him, shielding them all from public view, and enhancing the perpetrators' control over all of them.

In *Henderson v. State*, 285 Ga. 240 (675 SE2d 28) (2009), our Supreme Court found that asportation was satisfied under the *Garza* factors when three gunmen entered a duplex and robbed four men before forcing them to remove their clothes and sit on the floor of one room. Despite the fact that the gunmen only moved the victims from one room to another and that the movement was of minimal duration, the Court found that the movement was not an inherent part of the armed robbery and "created an additional danger to the victims by enhancing the control of the gunmen over them." Id. at 245 (5). This holding eviscerates Onumah's argument that victims cannot be isolated when they are brought into the same area.

Based on the foregoing, we conclude that the evidence was sufficient to support Onumah's convictions for kidnapping.

3. Lastly, Onumah argues that his convictions for armed robbery, kidnapping and false imprisonment must be reversed because the evidence that he was one of the assailants was insufficient.

Onumah was apprehended by police wearing a gray hooded sweatshirt with a white shirt over it, the same attire worn by one of the gunmen as shown in surveillance footage. On his person he was carrying a gun holster, a pair of sunglasses, a bag of marijuana, and black garbage bags with blue ties, identical to the bags that the robbers were carrying as they fled the scene of the crime, and in which the goods stolen from the pawn shop were found. While he was not carrying a garbage bag containing stolen goods by the time he was apprehended, the arresting officer testified that Onumah was carrying a full garbage bag when he first began to pursue him. Two garbage bags were later found in the parking lot through which the officer and Onumah had run, but the officer did not witness Onumah drop either bag. Further, one of the customers in the store testified that he had previously worked at the pawn shop, that Onumah was his cousin, and that he used to work with one of the other perpetrators.

Circumstantial evidence of identity may be sufficient to enable a rational trier of fact to find a defendant guilty beyond a reasonable doubt. E.g., *Mays v. State*, 198 Ga. App. 402, 403 (3) (401 SE2d 597) (1991). The jury heard the evidence presented at trial in this case

and found that it was sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), to prove beyond a reasonable doubt that Onumah was one of the perpetrators of the crimes charged. We agree, and thus this enumeration affords no basis for reversal.

*Judgment affirmed. Barnes, P. J., and Blackwell, J., concur.*

DECIDED NOVEMBER 15, 2011 —
RECONSIDERATION DENIED DECEMBER 12, 2011 — 

*David J. Walker*, for appellant.

*Tracy Graham-Lawson, District Attorney, Lisa L. Wells, Billy J. Dixon, Assistant District Attorneys*, for appellee.