**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008) http://www.gaappeals.us/rules/

**October 16, 2012**

# In the Court of Appeals of Georgia

A12A1054. WILSON v. THE STATE.

MILLER, Presiding Judge.

Following a jury trial, Charlton Wilson was convicted of burglary (OCGA § 16-7-1 (a) (2007)), armed robbery (OCGA § 16-8-41 (a)), possession of a firearm during the commission of a felony (OCGA § 16-11-106 (b)), and kidnapping (OCGA § 16-5-40 (a) (2007)). The trial court denied Wilson's motion for a new trial, as amended. On appeal, Wilson contends that the evidence was insufficient to sustain his kidnapping conviction, and that the trial court erred in charging the jury that the "slightest movement" was sufficient to prove the element of asportation for the

kidnapping offense. We agree that the evidence was insufficient to support the kidnapping conviction, and therefore, we must reverse on this ground.[1]

> On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence. We do not weigh the evidence or judge the credibility of the witnesses, but determine only whether the evidence authorized the jury to find the defendant guilty of the crimes beyond a reasonable doubt in accordance with the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

(Citation omitted.) *Williams v. State*, 304 Ga. App. 787 (697 SE2d 911) (2010).

So viewed, the trial evidence shows that Wilson and his accomplices, Charles Washington and Yauncy Daise, developed a plan to burglarize the victim's residence in Chatham County, believing that drugs and money were present inside the residence. For approximately one week prior to the incident, Wilson and his accomplices secretly observed the residence during the morning hours to determine the victim's routine and the times that she left the residence.

---

[1] In light of our reversal of Wilson's kidnapping conviction based upon the insufficiency of the evidence, we need not address Wilson's claim as to the erroneous jury charge on the element of asportation.

2

On the morning of April 23, 2007, Wilson and Daise made the unauthorized entry into the victim's residence, while Washington remained outside to serve as a lookout. Although no one was inside the residence when Wilson and Daise made entry, the victim unexpectedly returned to the residence while the burglary was in progress. When the victim entered the residence, Wilson approached her, pointed a gun in her face, and forced her to lay on the floor. Wilson then tied the victim's arms and legs, and covered her eyes with duct tape. Wilson threatened to kill the victim, and demanded that she tell them where the purported drugs and money were hidden. Daise kept watch over the victim, while Wilson ransacked the residence. Although Wilson was unable to find any drugs and money, he stole the victim's credit cards, debit cards, and identification cards from her purse.

Upon stealing the victim's property, Wilson and his accomplices fled from the residence and drove away in Wilson's car. The victim removed the duct tape and ran to a neighbor's house to call police. The victim's neighbor gave the responding officers a description of Wilson's car, which she had previously observed parked near the victim's residence at the time of the incident and on the prior mornings when Wilson and his accomplices had been observing the residence.

Shortly thereafter, officers stopped Wilson's car, which matched the description conveyed on the dispatch lookout call. Wilson was driving the car, and Washington and Daise were passengers. Following the stop, the officers recovered the victim's stolen property from Wilson's car. In addition, the officers recovered a roll of duct tape; a gun; cigars that the victim had reportedly smelled during the incident; bandanas; shoes; and clothing that Wilson and Daise wore during the incident.

Wilson and his accomplices were arrested and jointly charged with multiple crimes based upon the incident. After being advised of his *Miranda* rights, Wilson agreed to an interview with the detectives. Although Wilson initially denied being at the victim's residence, he later admitted that he had participated in the burglary. Wilson, however, denied that he had a gun and had committed the armed robbery.

Wilson's co-defendant, Daise testified as a witness for the State at trial. Daise's testimony conveyed details regarding Wilson's participation in the planning and execution of the crimes against the victim. At the conclusion of the trial, the jury returned a verdict finding Wilson guilty of the charged crimes.

On appeal, Wilson solely challenges his conviction of the kidnapping offense. "A person commits the offense of kidnapping when he abducts or steals away any

4

person without lawful authority or warrant and holds such person against his will." OCGA § 16-5-40 (a) (2007). The element of "abduct[ing] or steal[ing] away" the victim is known as asportation, which is established by proof of movement of the victim. See *Garza v. State*, 284 Ga. 696, 697 (1) (670 SE2d 73) (2008). We agree that the evidence failed to establish the element of asportation under the standard set forth in *Garza*, supra, 284 Ga. at 702 (1), and thus, Wilson's kidnapping conviction must be reversed.

> In 2008, th[e] [Supreme] Court [of Georgia] overruled prior law regarding the need for only slight movement to satisfy the asportation element of kidnapping and set out four factors to determine whether the asportation element was met: (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense. *Garza*, supra, 284 Ga. at 702 (1).

(Citation and punctuation omitted.) *Hammond v. State*, 289 Ga. 142, 143 (1) (710 SE2d 124) (2011). Although Wilson's acts and conviction occurred prior to the issuance of the *Garza* decision, the rule established in *Garza* must be retroactively applied. See id. at 144 (1) (ruling that the *Garza* rule was a substantive change in case

5

law and should be retroactively applied); see also *Goolsby v. State*, 311 Ga. App. 650, 653 (1) (a) (718 SE2d 9) (2011) (since the defendant's case was on direct review and not yet final when *Garza* was decided, it was in the pipeline so that the *Garza* test applied in determining whether the victim's movement was sufficient to establish asportation).[2]

Applying the *Garza* factors in this case, it is clear the victim's movement did not constitute the necessary asportation to support a kidnapping conviction. Notably, the victim's movement in this case is substantially similar to that in *Garza*, supra, 284 Ga. at 696, where the defendant threatened the victim with a handgun, caused the victim to fall to the floor, and bound the victim's wrists and ankles to prevent her from moving or escaping. Applying the factors to those circumstances, the Supreme Court of Georgia held that the victim's movements were insufficient to establish the element of asportation. Id. at 703 (2). The Court ruled that the victim's fall to the floor and the act of rising to sit in the chair where she was bound were of minimal

---

[2] We note that in 2009, subsequent to *Garza*, the legislature amended the kidnapping statute. See Ga. L. 2009, p. 331, § 1/HB 575; *Hammond*, supra, 289 Ga. at 143. The legislature specified that the amendment applies to crimes committed on or after July 1, 2009, and thus, the amendment is inapplicable here; rather, the *Garza* standard applies in this case. See *Brown v. State*, 288 Ga. 902, 905 (3), n. 2 (708 SE2d 294) (2011); *Dixon v. State*, 300 Ga. App. 183, 184 (1), n. 3 (684 SE2d 679) (2009).

duration and occurred during the course of the false imprisonment crime. Id. at 703 (2). The Court further ruled that the victim's movements did not significantly increase the dangers to her over those that she already faced as a victim of the false imprisonment crime. Id. at 704 (2).

There is no basis for distinguishing the movement that occurred in *Garza* from the movement in this case. Here, as in *Garza*, the act of forcing the victim from a standing position to laying on the floor was merely a positional change of minimal duration. This positional change occurred while the burglary and armed robbery crimes were in progress and were incidental to those crimes. The positional change did not significantly increase the dangers over those that the victim already faced during the commission of the burglary and armed robbery crimes. Consequently, the element of asportation necessary for kidnapping was not established under the circumstances in this case. See *Garza*, supra, 284 Ga. at 703-704 (2) (the act of forcing the victim to fall on the floor from a standing position did not constitute asportation within the meaning contemplated by the kidnapping statute); *Rayshad v. State*, 295 Ga. App. 29, 33-34 (1) (b) (670 SE2d 849) (2008) (same); see also *Williams*, supra, 304 Ga. App. at 789-790 (1) (the evidence of asportation did not support the kidnapping conviction since the movement of the victim from the office

7

to the floor of the bank's main lobby were for the purpose of confining the victim during the conduct of the armed robbery and was an inherent part of the armed robbery).[3]

*Judgment reversed. Ray and Branch, JJ., concur.*

---

[3] We reject the State's argument that no separate offense was being committed at the time of the victim's movement. To the contrary, the undisputed evidence established that the burglary and armed robbery offenses were still in progress and had not been completed when the victim was forced to the floor. The evidence showed that the incident did not terminate until later, after Wilson and his co-defendant had searched for and taken the victim's property. Cf. *Henderson v. State*, 285 Ga. 240, 245 (5) (675 SE2d 28) (2009) (defendant's kidnapping convictions were authorized since the movement of the victims from one room to another occurred after the armed robbery had been completed and it created an additional danger to the victims); *Dixon*, supra, 300 Ga. App. at 184-185 (1) (the element of asportation for kidnapping was met, since the defendant had taken the money from the cash registers and had completed the robbery before he forced the victim outside of the restaurant to the back of the building and warned her not to tell anyone what had occurred).