**SECOND DIVISION
BARNES, P. J.,
MILLER, and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/**

**May 22, 2013**

# In the Court of Appeals of Georgia

A13A0145. WICKERSON v. THE STATE.

BARNES, Presiding Judge.

Based upon allegations that he and two accomplices robbed four victims at gunpoint in the course of one evening in DeKalb County, Cedric Wickerson was indicted, tried, and convicted of multiple counts of armed robbery and aggravated assault. The trial court denied his motion for new trial. On appeal, Wickerson contends that there was insufficient evidence to prove that he was involved in the robbery of the second and third victims or to prove that venue for the crimes was proper in DeKalb County. He further contends that his trial counsel rendered ineffective assistance.

For the reasons discussed below, the evidence was sufficient to support the verdicts and Wickerson failed to demonstrate that his trial counsel was ineffective. However, the trial court erred in failing to merge one of Wickerson's aggravated assault convictions into one of his armed robbery convictions for sentencing purposes. Accordingly, we affirm in part, vacate in part, and remand for resentencing.[1]

Following a criminal conviction, we view the evidence in the light most favorable to the jury's verdict. See *Vaughn v. State*, 301 Ga. App. 391 (687 SE2d 651) (2009). So viewed, the evidence showed that on the night of December 1, 2008, within the span of approximately twenty minutes, four victims were robbed at gunpoint within a three mile radius of one another in DeKalb County. All of the robberies occurred in or near apartment complexes.

The first victim was walking into the Colony Apartments when a gold Cavalier with a dent on the side and a cracked tail light stopped near him. Two men jumped out while a woman remained in the car. One of the male robbers pointed a .357 caliber revolver at the victim and told him to "give it up." As the victim was emptying his pockets, the robber struck the victim in the jaw with the gun, causing him to stumble to the ground and drop his cell phone, his driver's license, and all of his cash.

_____

[1] The State's motion to dismiss the appeal is hereby denied.

2

The second male robber picked up the items that had been dropped. The victim got up from the ground, pushed one of the male robbers, and took off running. He ran to a friend's house, and his friend's mother called the police when she saw the victim at the door with blood on him.

That same night, a plumber and his assistant (the second and third victims) were trying to repair a broken water main at the Windchase Apartments. The plumber saw two men slowly approach the back of his parked utility truck. The two men then walked around the truck, and one of them pointed a handgun at the back of the plumber's head, said that it was a robbery, and made the plumber and his assistant turn around. The handgun held by the robber appeared to be a .357 caliber revolver. While the first robber held the plumber at gunpoint, the second robber approached the plumber's assistant and began striking him. When the plumber attempted to stop the second robber from hitting his assistant, the first robber struck the plumber twice in the head with the revolver, causing him to bleed heavily and ultimately requiring multiple stitches on the back right and left sides of his head. At the first robber's command, the plumber got down on the ground, after which the second robber began to kick him in the side. The robbers took the plumber's wallet and tool bag and his assistant's Blackberry cell phone. The robbers eventually walked away, and the

3

plumber's assistant went to a nearby apartment and had the tenant call the police while the plumber lay on the ground.

A few minutes after the robbery of the plumber and his assistant, a fourth victim was walking home to her apartment which was near the Windchase Apartments when she saw a gold Cavalier exit from that complex. She heard a car door close and then was approached by a man who grabbed her, pushed her against a fence, pointed a .357 caliber revolver in her face, and told her to hand over her purse and other belongings. The Cavalier backed up to where she and the robber holding her at gunpoint were located, and the fourth victim saw that there was a woman in the driver's seat and a man in the front passenger seat. After the robber who was holding her at gunpoint took her purse and camera, he got into the rear seat of the Cavalier, which then drove off. The fourth victim was able to see the license tag number as the Cavalier drove away, and she called 911 on her cell phone, reported what had happened, and provided a tag number to the dispatcher.

The three robberies occurred at approximately 9:30, 9:40, and 9:50 p.m. Shortly after 10:00 p.m., a be-on-the-lookout ("BOLO") was issued for the gold Cavalier with the specified license tag number and for the suspects seen in the car, identified as two men and a woman. An officer with the City of Pine Lake Police

4

Department was on patrol near where the robberies had occurred. After hearing the BOLO, the officer began looking for the Cavalier and located it within minutes in an apartment complex that was about a quarter of a mile away from the Windchase Apartments. The officer observed the Cavalier backing into a parking space there, and he saw that it was occupied by two men and a woman. The woman was driving, and one man was in the front passenger seat while the other man was in the backseat. The license tag number on the gold Cavalier closely matched the number given by the fourth victim,[2] and the car had a dent on the side and a cracked tail light as described by the first victim.

The officer stopped his patrol car, got out, and approached the Cavalier. The woman stayed in the car, but the two men got out and began walking away. The officer ordered the men to stop, but they fled into a nearby apartment unit, where they turned off the lights, shut the blinds, and locked themselves inside. At that point, the officer radioed for backup and arrested the woman who had stayed in the car.

A search warrant was obtained for the apartment. Upon executing the search warrant, officers located the two males inside the apartment and arrested them. No

---

[2] The fourth victim identified the tag number on the Cavalier as "AEW7333," and the tag number on the Cavalier seen by the patrol officer was "AEM7333."

5

one else was inside the apartment. During the search, officers recovered from inside the apartment the driver's license of the first victim, which had been cut into pieces; the tool bag of the second victim (the plumber), which had blood on it; and the camera of the fourth victim. They also recovered a .357 caliber revolver hidden in the toilet tank in the master bathroom, and bloody bullets under a mattress. During the subsequent execution of a search warrant for the gold Cavalier, officers recovered a Blackberry cell phone matching the description of the one stolen from the third victim (the plumber's assistant).

The woman driver of the Cavalier was identified as Whitney McGlasker, and the two men who had barricaded themselves inside the apartment were identified as Derrick Greene and Cedric Wickerson. The Cavalier was registered in the name of Wickerson's mother. The registered tenant of the apartment where Greene and Wickerson had barricaded themselves was Greene's girlfriend.

McGlasker, Greene, and Wickerson were indicted for multiple offenses arising out of the robberies. McGlasker was tried and convicted of three counts of armed robbery and four counts of aggravated assault. See *McGlasker v. State*, __ Ga. App. __ (2013 WL 1490756, Case No. A12A2079, decided April 12, 2013). Greene pled

6

guilty to multiple offenses relating to the robberies. Wickerson was tried separately on multiple counts of armed robbery and aggravated assault.[3]

At Wickerson's trial, the State presented testimony and exhibits pertaining to pre-trial photographic lineups that had been shown to the first, second, and fourth victims by a police detective.[4] The first victim had identified Greene and Wickerson in pre-trial photographic lineups as the two men who had robbed him, but he had been unable to identify the woman involved in the robbery. In addition to his testimony about the photographic lineups, the first victim positively identified Wickerson in the courtroom as the robber who had held him at gunpoint and struck him in the face with the revolver.

The second victim, the plumber, had identified Greene in a pre-trial photographic lineup as one of the men who had robbed him but had been unable to identify the other male robber. The plumber testified that he had been focused on Greene, the robber who had held the revolver to his head and struck him with it, and thus was unsure of the identity of the other man involved in the robbery.

---

[3] The State requested and obtained entry of a nolle prosequi on a separate count in the indictment for possession of a firearm by a convicted felon.

[4] The third victim, the plumber's assistant, did not testify at trial.

7

The fourth victim had identified McGlasker, Greene, and Wickerson in pre-trial photographic lineups as the individuals who had robbed her. In addition to her testimony about the photographic lineups, the fourth victim positively identified Wickerson in the courtroom as the robber who had jumped out of the Cavalier, held her at gunpoint, and taken her purse and camera.

The State also called several law enforcement officers as witnesses. Specifically, the State presented the testimony of the Pine Lake patrol officer who had located Wickerson and the other suspects after the robberies; the police investigators involved in the search of the apartment where Wickerson had barricaded himself and in the search of the Cavalier; and the police detective who had overseen the investigation of the robberies and had shown the photographic lineups to the victims.

Wickerson chose to testify and denied any involvement in the robberies, although he admitted that he had given inconsistent statements to the police about that night. He also admitted that had been with Greene around 8:30 p.m. and later at 10:00 p.m. on the night of the robberies, and that he had barricaded himself in the apartment with Greene because the police were outside. Wickerson, however, denied that he had been with Greene between 8:30 p.m. and 10:00 p.m. and called defense witnesses in an effort to show that he had been watching a football game at a friend's

8

apartment during that time period. But those witnesses conceded that Wickerson had not stayed to watch the entire game and had left around halftime.

After hearing all of the testimony, the jury found Wickerson guilty of four counts of armed robbery and six counts of aggravated assault.[5] Wickerson filed a motion for new trial and raised claims of ineffective assistance of counsel. After conducting an evidentiary hearing, the trial court denied the motion, resulting in this appeal.

1. Wickerson challenges the sufficiency of the evidence to convict him of armed robbery under counts 2 and 3 of the indictment.[6] Count 2 of the indictment charged him with the armed robbery of the plumber, and count 3 charged him with

---

[5] The trial court granted Wickerson's motion for a directed verdict on one of the counts of aggravated assault.

[6] Wickerson asserts that there was insufficient evidence to convict him of aggravated assault under counts 7 and 9 of the indictment, but his assertion is moot because the trial court merged those counts into other counts for purposes of sentencing. See *Nelson v. State*, 277 Ga. App. 92, 96 (1) (b) (625 SE2d 465) (2005). Additionally, Wickerson asserts that there was insufficient evidence to convict him of aggravated assault under count 8 of the indictment, but that assertion also is moot because we conclude supra in Division 3 that his aggravated assault conviction under count 8 should have been merged into his armed robbery conviction under count 2. See *Long v. State*, 287 Ga. 886, 887-888 (1) (700 SE2d 399) (2010).

the armed robbery of the plumber's assistant. Wickerson emphasizes that the plumber was unable to identify him as one of the perpetrators and that the plumber's assistant never testified at trial. Consequently, Wickerson contends that his convictions on counts 2 and 3 were contrary to the weight of the evidence and must be reversed. We disagree.

When we evaluate the sufficiency of the evidence under the standard of *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979), "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) In answering this question, "[w]e neither weigh the evidence nor assess the credibility of witnesses." (Citations omitted.) *Vaughn*, 301 Ga. App. at 391. Rather, "as long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict." (Punctuation and footnote omitted.) *Skinner v. State*, 318 Ga. App. 217, 221 (3) (733 SE2d 506) (2012).

OCGA § 16-8-41(a) provides that "[a] person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from

10

the person or the immediate presence of another by use of an offensive weapon[.]"
In determining whether there was sufficient evidence that the armed robberies at issue
were committed by Wickerson, we are mindful that

> [e]very person concerned in the commission of a crime is a party thereto
> and may be charged with and convicted of commission of the crime.
> One is concerned in the commission of a crime where the person either
> directly commits, intentionally causes another to commit, intentionally
> aids or abets the commission of, or intentionally advises or otherwise
> encourages another to commit the crime. A person's involvement in the
> commission of a crime may be inferred from that person's presence,
> companionship, and conduct before, during and after the crime.

(Citations and punctuation omitted.) *Sims v. State*, 306 Ga. App. 68, 70 (1) (701 SE2d
534) (2010). See OCGA § 16-2-20 (a), (b).

Applying these principles, we conclude that the evidence previously discussed
was sufficient to authorize a rational jury to find beyond a reasonable doubt that
Wickerson, either directly or as a party to the crime, participated in the armed
robberies of the plumber and his assistant. *Jackson*, 443 U. S. at 319 (III) (b).
Although there was no direct testimony from the plumber identifying Wickerson as
one of the two men involved in those crimes, "[c]ircumstantial evidence of identity
may be sufficient to enable a rational trier of fact to find a defendant guilty beyond

11

a reasonable doubt." *Onumah v. State*, 313 Ga. App. 269, 272 (3) (721 SE2d 115) (2011). See *Mays v. State*, 198 Ga. App. 402, 403-404 (3) (401 SE2d 597) (1991). Furthermore, even though the plumber's assistant did not testify at trial, the testimony of a victim is not required to sustain a conviction where there is other evidence that the defendant committed the acts which establish the elements of the offense. See *Anthony v. State*, 276 Ga. App. 107, 108 (1) (622 SE2d 450) (2005); *Mullins v. State*, 267 Ga. App. 393, 395 (1) (a) (599 SE2d 340) (2004).

Here, there was sufficient "other evidence" circumstantially connecting Wickerson to the robberies of the plumber and his assistant to sustain his convictions. The plumber identified Greene as one of the two robbers, and the first victim identified Wickerson as having committed an armed robbery with Greene ten minutes *before* the robbery of the plumber and his assistant, and the fourth victim identified Wickerson as having committed an armed robbery with Green ten minutes *after* the robbery of the plumber and his assistant. Additionally, the Pine Lake patrol officer saw Wickerson and Greene together shortly after the robberies when they exited from the gold Cavalier, which was registered in the name of Wickerson's mother and from which a Blackberry cell phone matching the description of the one stolen from the plumber's assistant was later recovered. The patrol officer further observed

12

Wickerson and Greene flee into an apartment unit where the tool bag of the plumber with his apparent blood on it was later recovered, along with a .357 caliber revolver matching the handgun described by the plumber as being used in the robbery.

This combined circumstantial evidence was sufficient to permit a jury to infer that Wickerson was one of the two men involved in the armed robberies of the plumber and his assistant. While Wickerson denied any involvement in those offenses and attempted to present an alibi defense, the jury "was entitled to disbelieve [his] version of the facts." (Citation and punctuation omitted.) *Herrera v. State*, 306 Ga. App. 432, 433 (1) (702 SE2d 731) (2010). Accordingly, we conclude that there was sufficient evidence to support the verdicts for armed robbery.

2. Wickerson also argues that the State failed to prove beyond a reasonable doubt through competent evidence that venue for the crimes committed against the first, second, and third victims was proper in DeKalb County.[7] Again, we disagree.

> Our Georgia Constitution requires that venue in all criminal cases must be laid in the county in which the crime was allegedly committed. Venue is a jurisdictional fact, and is an essential element in proving that one is guilty of the crime charged. Like every other material allegation

---

[7] The fourth victim testified that the crimes committed against her occurred in DeKalb County, and Wickerson does not challenge the State's proof of venue as to those specific crimes.

in the indictment, venue must be proved by the prosecution beyond a reasonable doubt. The State may establish venue by whatever means of proof are available to it, and it may use both direct and circumstantial evidence.

(Citation and punctuation omitted.) *McGlasker*, __ Ga. App. at __ (1).

The first victim testified as to the location where he was robbed, and the second victim (the plumber) testified as to the location where he and the third victim (his assistant) were robbed, but they did not specify the county where the crimes occurred. The lead police detective, however, pointed out on a map the locations of the crimes as had been identified by the victims and testified that the map was of an area of DeKalb County. "This was sufficient evidence concerning the location of the acts to establish that the crimes occurred in DeKalb County." *McGlasker*, __ Ga. App. at __ (1) (venue established through police detective who "testified that the three robberies took place at apartments located within a three-mile area which he referenced from a map showing the area," and "further testified that the area was within DeKalb County"). See *Armstrong v. State*, 286 Ga. 420, 421 (2) (688 SE2d 629) (2010) ("Proof of venue is sufficient where the State has submitted a map of the crime scene area into evidence and presented testimony that the crime occurred on a street located in the county in which the defendant is being prosecuted.").

In reaching this conclusion, we reject Wickerson's assertion that the detective's testimony about the locations of the robberies on the map posed a hearsay problem because his information about where the robberies occurred came from his interviews of the victims. The victims testified at trial as to the locations of the robberies, and the detective then took the stand and pointed out from his personal knowledge of the layout of the county where those locations were on a map of DeKalb County. There simply was no hearsay problem with the detective's testimony.

3. Wickerson was convicted and sentenced for the armed robbery of the plumber (count 2) and for the aggravated assault of the plumber for striking him in the head with a handgun (count 8). We are constrained to hold that the trial court erred in failing to merge count 8 into count 2 for sentencing purposes for the same reasons explained in our recent opinion in *McGlasker*, __ Ga. App. at __ (2). In that case, this Court held that McGlasker, the woman accomplice who was separately tried and convicted as a party to the armed robbery and aggravated assault of the plumber, should not have been sentenced for both the robbery and the assault. See id. This Court reasoned that the aggravated assault was a lesser included offense of the armed robbery and that the assault conviction therefore should have been merged into the robbery conviction for sentencing purposes. See id.

15

Based on the reasoning of *McGlasker*, we must conclude that the aggravated assault of the plumber was a lesser included offense of the armed robbery of the plumber and that the trial court erred by not merging the assault into the robbery. Wickerson's conviction and sentence for aggravated assault under count 8 therefore must be vacated, and the case must be remanded to the trial court for resentencing. See generally *Sears v. State*, 292 Ga. 64, 73-74 (6) (734 SE2d 345) (2012). This disposition is required, even though Wickerson did not enumerate the merger issue as error on appeal. See *Washington v. State*, 310 Ga. App. 775, 781-782 (7), n. 32 (714 SE2d 364) (2011).

4. Wickerson further argues that his trial counsel was ineffective in several respects. We are unpersuaded.

To succeed on a claim of ineffective assistance of counsel under the test set forth in *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984), "[Wickerson] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance." *Johnson v. State*, 281 Ga. 770, 771 (2) (642 SE2d 827) (2007). If Wickerson fails to establish one of the prongs of the *Strickland* test, he cannot succeed on his claim of ineffective assistance, and we

16

need not examine the other prong. Id. at 771-772 (2). With this framework in mind, we turn to the specific allegations of ineffective assistance raised by Wickerson.

(a) Wickerson first contends that his trial counsel was ineffective for failing to subpoena for trial the police officer who took the fourth victim's statement after she was robbed. According to Wickerson, the fourth victim's testimony at trial was inconsistent with her statement to the police officer because she testified at trial that the robber who held her at gunpoint pushed her against a fence, but she allegedly told the officer that the robber pulled her to the ground. Based upon this inconsistency, Wickerson maintains that if the officer had testified about the fourth victim's prior statement, it would have given "rise to doubt about the ability of the [victim] to recollect exactly what happened during the incident in question."

Pretermitting whether his trial counsel was deficient for failing to subpoena the police officer, we conclude that Wickerson cannot succeed on his ineffectiveness claim because he cannot show prejudice. Wickerson did not call the police officer who took the fourth victim's statement to testify at the motion for new trial hearing, and "[w]hen a defendant bases his ineffective assistance of counsel claim on counsel's decision not to call a particular witness, he must introduce either testimony from the uncalled witness or a legally recognized substitute for his testimony."

17

(Citation and punctuation omitted.) *Cartwright v. State*, 291 Ga. 498, 500 (2) (b) (731 SE2d 353) (2012). Moreover, the inconsistency alleged by Wickerson – the fourth victim being pushed against a fence versus being pulled to the ground by the robber – was simply not a material one to the case. Under these circumstances, Wickerson cannot show that there is a reasonable probability that if the police officer had testified about the fourth victim's prior statement, the outcome of the trial would have been different. See *Taylor v. State*, 282 Ga. 693, 696-697 (2) (c) (653 SE2d 477) (2007) (defendant could not show prejudice arising from failure to impeach witness with prior inconsistent statement, where there was no reasonable probability that the difference between witness's prior statement and her in-court testimony would have affected the result of the trial).

(b) Wickerson next contends that his trial counsel was ineffective for failing to seek a curative instruction after the trial court struck the testimony of McGlasker, the woman involved in the robberies, who testified that Wickerson was her boyfriend and that his mother had a gold Cavalier, but then refused to testify any further. Wickerson's claim is without merit. The record reflects that the trial court sua sponte gave a curative instruction after striking McGlasker's testimony. Hence, Wickerson

clearly cannot establish that his trial counsel's failure to seek a curative instruction prejudiced him in any manner.

(c) Wickerson also contends that his trial counsel was ineffective for failing to object when the first victim testified that he had been scared to come to court and testify because he had been held at gunpoint during the robbery, "didn't want to get involved," and "didn't want to put [him]self in danger" because "you never know what's going to happen when you come to court." But "there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (Punctuation and footnote omitted). *Tyner v. State*, 313 Ga. App. 557, 565 (6) (c) (722 SE2d 177) (2012). Moreover, "[t]he decision of whether to interpose certain objections is a matter of trial strategy and tactics." (Citation, punctuation, and footnote omitted.) *Abernathy v. State*, 299 Ga. App. 897, 903 (3) (a) (685 SE2d 734) (2009). And "[t]rial tactics and strategy, no matter how mistaken in hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." (Citation and punctuation omitted.) *Flemister v. State*, 317 Ga. App. 749, 757 (4) (b) (732 SE2d 810) (2012).

Significantly, Wickerson failed to question his trial counsel at the motion for new trial hearing as to why he did not object to the first victim's testimony. "Under these circumstances, "any decision not to object must be presumed to be a strategic one, . . . [and] the only remaining question under the first prong of *Strickland* is whether that decision was so patently unreasonable that no competent attorney would have decided to forego making the objection." (Citations and punctuation omitted.) *Flemister*, 317 Ga. App. at 757 (4) (b).

"It is entirely reasonable for an attorney to make the strategic decision not to object at every opportunity." *Flemister*, 317 Ga. App. at 757 (4) (b). A competent attorney could have made the strategic decision to forego objecting to the first victim's brief, generalized testimony about being scared to testify so as not to draw unnecessary attention to it. See, e.g., *Bogan v. State*, 255 Ga. App. 413, 415-416 (3) (b) (565 SE2d 588) (2002) (tactical decision not to object did not constitute deficient performance where counsel "made a tactical decision not to object or ask for a curative instruction . . . because he did not want to draw unnecessary attention to the issue."). Consequently, Wickerson cannot succeed on his ineffective assistance claim.

(d) Lastly, Wickerson contends that his trial counsel was ineffective for failing to object when the prosecutor allegedly argued during closing that the third victim, the plumber's assistant, did not come to trial because he was scared. But the record shows that closing arguments were not transcribed. "Because closing arguments were not transcribed, we cannot review this enumeration." *Jackson v. State*, 256 Ga. App. 829, 831-832 (5) (570 SE2d 40) (2002). See *Carswell v. State*, 251 Ga. App. 733, 736 (3) (555 SE2d 124) (2001).

*Judgment affirmed in part, vacated in part, and case remanded for resentencing. Miller and Ray, JJ., concur.*